THE ILLINOIS MALLEABLE IRON COMPANY, Appellant, *vs.*
THE COMMISSIONERS OF LINCOLN PARK *et al.* Appellees.

*Opinion filed April 23, 1914—Rehearing denied June 4, 1914.*

1. ORDINANCES—*ordinance construed as not entirely excluding abutting owner's wagons from street.* An ordinance prohibiting traffic wagons from using a parkway, except that in carrying goods to or from premises abutting upon the parkway the wagons may enter the parkway at the cross-street nearest the premises but shall not proceed farther than the nearest cross-street thereafter, must be construed as permitting the owner of premises situated on the parkway to use the parkway with his wagons in going to or coming from the premises as far as the nearest cross-street in either direction.

2. STREETS AND ALLEYS—*power of legislature over streets is absolute so far as public is concerned.* The power of the legislature over public streets, so far as the public is concerned, is absolute, and it may change their control at its pleasure, giving jurisdiction over them to the city, to park commissioners or any other authority it sees fit.

3. SAME—*legislature may limit use of streets.* So long as private rights are not invaded the legislature may authorize the vacation of streets or the limiting of their use, and may permit their use for any purpose not incompatible with the object for which they were established, and it is within its power to authorize park commissioners to exclude traffic teams from a pleasure driveway.

4. SAME—*a property owner's right of access cannot be taken away without compensation.* Owners of property bordering upon a street have, as an incident of their ownership, the right of access by way of the street which cannot be taken away or materially impaired without compensation.

5. SAME—*when restricted use of street does not deprive abutting owner of property.* An ordinance prohibiting the owner of premises abutting upon a street which has been set apart as a parkway, from using such parkway for his traffic wagons except between the premises and the nearest cross-street in either direction, does not operate to deprive the owner of his property without compensation, and is not, as to him, invalid.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

WILLIAM J. MAHER, and SAMUEL B. KING, for appellant.

FRANCIS O'SHAUGHNESSY, and CHARLES A. CHURAN, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook county dismissing for want of equity an amended bill filed by the appellant, the Illinois Malleable Iron Company, to restrain the appellees from enforcing an ordinance prohibiting vehicles carrying goods, merchandise or wares upon Diversey parkway. The appellant claims that the enforcement of the ordinance constitutes a taking or damaging of its property for a public use without just compensation, in violation of section 13 of article 2 of the constitution. A demurrer was sustained to the amended bill, and an appeal was taken to this court on account of the constitutional question.

The amended bill alleges that in 1887, prior to the time the commissioners of Lincoln Park acquired jurisdiction over Diversey parkway, the appellant acquired a tract of land fronting upon Diversey parkway and established there its plant and place of business. The business consisted of the manufacture, sale and distribution of iron products, and in its usual course horses and wagons were kept upon the premises for use in delivering the products of the appellant to different customers in the city of Chicago and to railway freight depots. The principal hauling was to the east, north-east and south-east of the premises. As wagons are ordinarily loaded with products such as those of the appellant, paved streets are necessary for them to travel upon, and Diversey parkway, extending east and west, was a paved street its entire length. The north and south streets east of the appellant's premises, which intersect Diversey parkway, in their order are Hemitage avenue, Paulina street

and Marshfield avenue, the latter extending south to and beyond Wrightwood avenue, which is parallel to Diversey parkway. At the time of filing the amended bill, and for many years before, all these streets were unpaved, muddy and almost uniformly unusable, so that appellant's wagons used in hauling its products became stalled therein. The first north and south street east of appellant's plant which is paved and usable by loaded wagons is Ashland avenue, which is the next street east of Marshfield avenue. On October 21, 1891, the commissioners of Lincoln Park established, and have since maintained, Diversey parkway as a boulevard within their jurisdiction, and on July 23, 1902, passed the following ordinance:

"No omnibus, wagon, cart, dray, truck or other vehicle for carrying goods, merchandise or wares or other articles, except such as are engaged in repairing or constructing said parks, boulevards, parkways, streets or driveways, shall be allowed thereon: *Provided, however,* that wagons or other vehicles carrying goods, merchandise or other articles to or from any house or premises abutting upon such boulevards, parkways or streets shall be permitted to enter thereon at the cross-street nearest said house or premises in the direction in which the same are moving and deliver or receive such goods, merchandise or other articles, but shall not proceed thereon further than the nearest cross-street thereafter: *And provided further,* that at any time before the hour of two o'clock in the afternoon of each day, delivery wagons having wheels with tires of not less than three and one-half inches in width, drawn by one horse, only, shall be allowed to proceed on and along said boulevards, parkways and streets. But this provision shall not apply to any of the driveways within the limits of the parks. Any person violating any clause, section or provision of this chapter shall be fined in a sum not exceeding $100 for each offense."

By reason of the impassable condition of the three cross-streets intersecting Diversey parkway next east of the appellant's premises the appellant has attempted to use Diversey parkway with its teams and wagons to Ashland avenue, which is the first and only available route to and from places east, north-east and south-east of appellant's premises with which the appellant transacts business, but these efforts have been frustrated by the appellees in the enforcement of the ordinance mentioned; the commissioners have terminated the license granted to the appellant for a term to use the boulevard, and have warned it that on account of the provisions of the ordinance it would not be allowed to use the boulevard; the appellant's drivers and teamsters have been arrested and fined, and appellees have threatened to arrest and prosecute such drivers and teamsters whenever they attempt to use the boulevard in violation of the terms of the ordinance. The prayer is that the ordinance be declared unconstitutional and void and not applicable to the appellant, and that the appellees be enjoined from interfering with the use by the appellant of the boulevard.

The appellant contends that the ordinance, while it permits strangers to drive to and from the appellant's plant provided they enter upon and depart from Diversey parkway by the cross-street nearest the plant, forbids the appellant from driving its wagons from its plant upon Diversey parkway. Literally, the proviso permits wagons carrying goods to or from premises abutting on the boulevard to enter the boulevard only at the nearest cross-street, and therefore a wagon which had departed from the boulevard and entered upon abutting premises could never get back without violating the ordinance, for it could enter upon the boulevard only from the premises and not from the nearest cross-street. For the same reason the appellant's wagons, when they had once arrived upon the premises, could not leave them without violating the ordinance. We cannot give the ordinance so narrow a construction as to produce

263 − 29

such an absurd result. While in accordance with the letter of the ordinance, such a construction would be contrary to its spirit, which is, that wagons carrying goods to or from premises abutting on the boulevard may use the boulevard for that purpose, but only between the cross-streets nearest, in either direction, to the premises.

The appellant's principal contention, however, is, that as an abutting property owner it has a special right in the highway as a means of access to its property and of enjoyment of the free and convenient use thereof. The appellant does not question the jurisdiction of the commissioners of Lincoln Park over the street or their right to establish and maintain a boulevard. What it complains of is the restriction upon appellant's right to use the boulevard after it has been established, which amounts, as it claims, to a deprivation of its property without compensation. The power of the legislature over public streets, so far as the public interest is concerned, is absolute, and it may change their control at its pleasure, giving jurisdiction over them to the city, to park commissioners or such other authority as it may see fit. (*McCormick* v. *South Park Comrs.* 150 Ill. 516.) So long as private rights are not invaded, the legislative authority may vacate streets, may limit their use, and may permit their use for any purpose not incompatible with the object for which they were established. (*West Chicago Park Comrs.* v. *McMullen*, 134 Ill. 170; *Barrows* v. *City of Sycamore*, 150 id. 588.) Traffic teams may be excluded from a pleasure driveway. (*Cicero Lumber Co.* v. *Town of Cicero*, 176 Ill. 9.) The ordinance, so far as the public is concerned, was clearly a valid exercise of power by the commissioners, and the appellant does not claim that it was not. It contends, however, that the enforcement of the ordinance interferes with its right of access to its premises, and that this right is its private property, which the commissioners have no right to destroy without making compensation therefor.

Owners of property bordering upon a street have, as an incident of their ownership, a right of access by way of the streets which cannot be taken away or materially impaired without compensation.   (*City of Chicago* v. *Union Building Ass'n,* 102 Ill. 379; *Rigney* v. *City of Chicago,* id. 64; *Shrader* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 242 id. 227.)   The inquiry, therefore, is as to the extent of this right of access.   The ordinance, under the construction we have given to it, does not interfere with the appellant's use of Diversey parkway in the block in which its premises are situated.   Its right of access to that extent is not interfered with, but it contends that its right as an abutting owner is to use the street upon which its property abuts as far as such street constitutes the most direct route to the destination, and that the requirement of taking a circuitous route constitutes an impairment of that right.   A claim of this character was the subject of consideration in the case of *City of East St. Louis* v. *O'Flynn,* 119 Ill. 200, in which the city was sued by a lot owner for damages resulting from the vacation of certain streets and alleys.   The lot fronted on Third street, but was some distance from that part of Third street vacated by the city ordinance.   The court stated the question to be, "Can defendant, as a matter of law, be held liable to the plaintiff for damages resulting from the vacation of streets and alleys between Front and Fourth streets, the vacation being in another block in the city than that in which plaintiff's property is situated?"   After citing the cases of *City of Chicago* v. *Union Building Ass'n, supra,* and *Littler* v. *City of Lincoln,* 106 Ill. 353, the court said (p. 206) : "The facts of the case being considered bring it precisely within the principle of the cases cited.   Here, plaintiff's lot is not adjacent to the streets or alleys vacated.   It is in another block.   The access to and egress from his lot are not affected by the vacating ordinance passed by the city.   The street in front and the alley in the rear of his property

remain open as before, affording the same access to and egress from it. The inconvenience that would be occasioned to plaintiff in going from the street in front of his house to a particular part of the city, on account of vacating and closing up certain streets and alleys in another block, is the same kind of damage that would be sustained by all other persons in the city that might have occasion to go that way, and although the inconvenience he may suffer may be greater in degree than to any other person, that fact would not give him a right of action."

In *Guttery* v. *Glenn,* 201 Ill. 275, the same question was involved, and it was held that the inclosure and complete obstruction of the street on which the complainant's property fronted, but in the next block, though a public nuisance, did not entitle the complainant to an injunction, because he suffered no special or particular injury from the public nuisance so created. The inconvenience sustained by him in going from the street in front of his premises to a particular part of the city on account of the closing of the street differed in degree, only, and not in kind, from that sustained by all other persons having occasion to go that way. So in the present case, the inconvenience caused the appellant by the exclusion of traffic teams from the boulevard, though greater in degree, is precisely the same in kind as that to all other persons having occasion to do heavy hauling from places in the neighborhood of the appellant's premises to places east, north-east or south-east of the intersection of the next street east of them. If the boulevard might be entirely closed to all passage by its vacation or complete obstruction, without any liability for damages, certainly its partial closure by the exclusion of traffic teams could not be the basis of a claim for damages or an injunction. The rule is stated in Elliott on Roads and Streets, (vol. 2, 3d ed. sec. 1181,) as follows: "Owners of land abutting upon neighboring streets, or upon other parts of the same street, at least when beyond the next cross-street,

are not, however, entitled to damages, notwithstanding the value of their lands may be lessened by its vacation or discontinuance." To the same effect, in substance, are 3 Dillon on Mun. Corp. (5th ed.) sec. 1160, and 1 Lewis on Eminent Domain, (3d ed.) sec. 123, and numerous authorities are cited in these works in support of the text. The authorities are not entirely uniform, but their great weight sustains the doctrine announced.

The demurrer to the bill was properly sustained, and the decree of the superior court is affirmed.

*Decree affirmed.*