[No. 1093-3.    Division Three.    December 30, 1975.]

BILLINGTON BUILDERS SUPPLY, INC., *Appellant*, v. THE CITY OF YAKIMA, *Respondent*.

*Perry J. Robinson*, for appellant.

*Fred H. Andrews, City Attorney*, for respondent.

McINTURFF, C.J.—Billington Builders Supplying, Inc. (Billington) appeals from an adverse judgment in its action for damages against the City of Yakima (Yakima) for elimination of parallel on-street parking in front of its business premises. Generally, Billington does not contest the right of Yakima to remove parking in front of its premises but asks for damages resulting from breach of an alleged contract between the parties for maintenance of on-street parking by Yakima.

In 1964 Yakima undertook by numerous purchases and condemnations the acquisition of a long strip of property for widening of Nob Hill Boulevard, then Lenox Avenue. After negotiations with Billington in which Yakima assured Billington that widening plans presently called for on-street parking, Yakima purchased a 10-foot-wide strip from Billington for $306. The widening project was completed as planned, with curbing and on-street parking.

In 1970, Yakima enacted an ordinance eliminating on-street parking on Nob Hill Boulevard. It is argued by Billington that elimination of on-street parking in front of its business will reduce clientele, hinder backing and maneuvering in its driveway, and will necessitate extensive remodeling of its building and yards to accommodate traffic which will pass within 7 feet of the front door. Arguably, the front door will have to be moved to the side, shelving rearranged, fences relocated, and front windows closed off from flying rocks and slush, with resulting loss of window advertisement. Billington unsuccessfully sought compensation for these alleged damages at trial.

Billington first assigns error to the trial court's conclusion of law that no contract existed between the parties for the maintenance of on-street parking. Billington reasons that it agreed to sell the land in question to Yakima for only $306 because of assurance by Yakima that there was to remain in front of the business a 7-foot-wide parking strip along the entire length of the property. The only writing of the alleged contract, other than the deed which has no reservations, is a statement in a 1966 letter from the

City of Yakima to Mr. Robinson, attorney for Billington, as follows:

> Plans for that project *presently* include the use of most of the above mentioned 10-foot strip for paved on-street parking.

(Italics ours.) Until 1970, there was no interference with the parking area in question. The word "presently" as used in the above 1966 quotation obviously does not mean in perpetuity and therefore cannot be the basis for a continuing contract, the 1970 breach of which would give rise to damages.

Billington next urges that equitable estoppel should be applied against Yakima because present representations by Yakima concerning elimination of on-street parking are inconsistent with representations concerning maintenance of on-street parking made at the time of purchase of the 10-foot strip. It is contended that because Billington will be damaged by these representations, Yakima should be equitably estopped from eliminating on-street parking.

■ We find the affirmative defense of equitable estoppel to be without merit under the present circumstances. Though equitable estoppel may be asserted against a municipal corporation[1] there must first be an admission, statement or act inconsistent with the claim afterward asserted.[2] Original representations by Yakima to presently include on-street parking, and later representations not to include perpetual on-street parking, are not inconsistent, thus negating an essential element of equitable estoppel.

■ Billington also seeks compensation upon the theory of inverse condemnation[3] of their alleged property

[1] *Seattle v. P.B. Inv. Co.*, 11 Wn. App. 653, 662, 524 P.2d 419 (1974).

[2] *Kessinger v. Anderson*, 31 Wn.2d 157, 170, 196 P.2d 289 (1948); *Pacific Nat'l Bank v. Richmond*, 12 Wn. App. 592, 595, 530 P.2d 718 (1975); *Mercer Island v. Steinmann*, 9 Wn. App. 479, 481, 513 P.2d 80 (1973).

[3] Inverse condemnation is "an action brought against a governmental entity having the power of eminent domain to recover the value of property which has been appropriated in fact, but with no formal exercise of the power." *Martin v. Port of Seattle*, 64 Wn.2d 309, 310 n.1, 391 P.2d 540 (1969); U.S. Const. amend. 5; Const. art. 1, § 16 (amendment 9).

right in on-street parking. Billington assigns error to the trial court's conclusion of law that the loss of on-street parking is not a compensable item of damage. It is established that a benefit to an abutting property owner arising from the regulation of traffic within the borders of a public thoroughfare is a privilege and not a right, the loss of which cannot give rise to compensable damages. As stated in *Sandona v. Cle Elum*, 37 Wn.2d 831, 840, 226 P.2d 889 (1951), as quoted from *Hickey v. Riley*, 177 Ore. 321, 162 P.2d 371 (1945):

> "Parking is not a right, but a privilege, and, as such, is subject to reasonable regulation under the police power. [Citation omitted.]"

This was reaffirmed in *State v. Williams*, 64 Wn.2d 842, 844, 394 P.2d 693 (1964):

> It was error for the trial judge to permit the jury to consider evidence of an alleged decrease in the value of the property resulting from possible changes in the regulations governing parking, while loading and unloading, since this is a reasonable exercise of the police power and is not a compensable item of damage. *Walker v. State*, [48 Wn.2d 587, 590-91, 295 P.2d 328 (1956)]. Such regulations do not invade the petitioners' vested right of ingress and egress to their property abutting Browne Street, and are unrelated to damages sustained by the petitioners resulting from the change of grade.

We conclude these quoted cases control the present action.

Because it is within the police power of Yakima to make reasonable regulation of traffic on the public thoroughfare without compensation to abutting property owners, the person who sells property to the municipality for parking does so with the presumed knowledge that the law allows the elimination of that parking without compensation to the seller. In the present case there is neither allegation nor evidence that elimination of parking on Nob Hill Boulevard is an unreasonable exercise of police power[4] and not serving to the common good of the traveling public. Bill-

---

[4] *See Shea v. Olson*, 185 Wash. 143, 153, 53 P.2d 615, 111 A.L.R. 998 (1936).

ington has lost a privileged buffer zone between its business and traffic, and not a property right, for which no compensation is due.

Lastly, Billington argues that elimination of on-street parking is a variance in the original widening plan upon which Billington relied in establishing the purchase price for its 10-foot strip. This variance, it contends, constitutes a second taking of property for which compensation must be given. But authority cited by Billington in support of this argument deals with the right of *access* to a public thoroughfare,[5] which right is not subject to noncompensable elimination by exercise of police power through traffic regulations.[6] Billington's complaint alleges property damage through loss of a privilege and not loss of the right of access, making these cited cases distinguishable from the present case.

Judgment of the Superior Court is affirmed.

GREEN and MUNSON, JJ., concur.

---

[5]*Feuerborn v. State*, 59 Wn.2d 142, 367 P.2d 143 (1961); *State v. Basin Dev. & Sales Co.*, 53 Wn.2d 201, 332 P.2d 245 (1958).

[6]*State v. Williams, supra* at 844.